**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
DAVID PARSON,

                      :     **REPORT & RECOMMENDATION**

         Plaintiff,

                      :     **13cv5745 (WHP) (MHD)**

     -against-

                      :

PEOPLE OF THE STATE OF
NEW YORK,                :

         Defendant.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

12/30/14

TO THE HONORABLE WILLIAM H. PAULEY, U.S.D.J.:

Pro se petitioner David Parson seeks a writ of habeas corpus challenging his June 4, 2009 conviction in New York State Supreme Court, New York County, on a single count of Criminal Possession of a Weapon in the Second Degree. (See June 4, 2009 Tr. 297, 462). The court sentenced Parson to three and one-half years of imprisonment, followed by five years of supervised release. (July 14, 2009 Tr. 5-6).

Parson presses three grounds for relief. First, he argues that the trial court improperly admitted out-of-court statements from an unidentified eyewitness, violating his right to confront his accuser under the Confrontation Clause of the United States Constitution and allowing the introduction of inadmissible hearsay. (Pet. ¶ 12). Second, Parson contends that the trial

1

court's refusal to compel the testifying witness Victor Farfan to identify the out-of-court declarant interfered with Parson's right to present a defense. (Id.). He further contends that the trial judge denied him a fair trial by not granting a limiting instruction as to how the jury was to treat the purported out-of-court statement, and he also suggests that he was somehow precluded from exploring a related inconsistency in Mr. Farfan's testimony. (Id.). Third, Parson contends that the police violated his rights under the Fourth Amendment when they continued to detain him after their initial stop and frisk of his person revealed no weapon. (Id.).

Respondent argues that both the Confrontation Clause claim and the claim related to the court's refusal to compel identification of the out-of-court declarant are partially procedurally barred, not cognizable, and entirely meritless. (Opp. Mem. 14-29). As for the Fourth Amendment claim, respondent contends that it is barred from habeas review pursuant to Stone v. Powell, 428 U.S. 465 (1976). (Opp. Mem. 29-31).

For the reasons that follow, we recommend that the writ be denied and the petition dismissed with prejudice.

2

## Prior Proceedings

### A. The Arrest, Pre-Trial Motion to Suppress, and First Trial

The charges against Parson stemmed from an incident that took place on April 12, 2008, when Mr. Farfan reported to a police officer that he had seen Parson holding a gun on the street and saying "I kill all the family." (June 3, 2009 Tr. 56). The police detained petitioner, and although their initial pat-down of him yielded no weapon, Farfan told the officers that he had seen Parson toss it in a dumpster. (Id. at 68-74). A police search of the dumpster yielded the firearm, and a more intrusive search of Parson led to the discovery that he was in possession of three bullets. (Id. at 148-51). A New York County Grand Jury subsequently charged Parson with one count of Criminal Possession of a Weapon in the Second Degree. (See Oct. 14, 2008 Tr. 3).

Prior to the start of trial, petitioner moved to suppress the three bullets found on his person. (Id. at 33). Following testimony by one of the police officers involved, Officer Jason Nino, petitioner argued that the officers' discovery of a gun in a dumpster near petitioner did not constitute probable cause to arrest him, thus undermining the validity of both the search

3

that yielded the bullets and his arrest, and requiring suppression of the bullets. (Id. at 32-33). The prosecutor argued that the discovery of the gun was based on information given to the police by an eyewitness -- specifically, Mr. Farfan -- who had reported seeing Parson dispose of it in the dumpster. (Id. at 34-35). He therefore asserted that the discovery of the firearm was sufficient to support the defendant's arrest, and thus the bullets were retrieved during a lawful search incident to arrest. (Id.).

The court held that the search was incident to a lawful arrest, as Mr. Farfan's statements about, and the recovery of, the gun from the dumpster provided probable cause for the arrest. The judge therefore declined to suppress the bullets. (Id. at 37).

Petitioner went to trial before the Hon. Michael J. Obus, S.C.J., and a jury in October 2008. That proceeding ended on October 30, 2008 with a mistrial, after the jury was unable to reach a verdict. (Oct. 30, 2008 Tr. 448-50).

**B. The Second Trial**

A second trial commenced before the Hon. Charles Solomon, S.C.J., and a jury on June 3, 2009. The prosecution presented testimony from Mr. Farfan (June 3, 2009 Tr. 38-112) and three New York City Police Department officers involved: Officer Nino (id. at 133-70), Officer Christian Perez (id. at 171-90), and Detective Satimes Tejada. (id. at 197-219). Parson testified in his own defense. (Id. at 223-280). We briefly summarize the gist of their testimony.

Victor Farfan works as a caseworker for a foster care agency. (Id. at 4-5). He testified that on April 12, 2008, at about noon, he was parked in his car on Arden Street with one of his clients, a 15-year-old girl. (Id. at 42-43, 51, 98). Farfan stated that, while seated in the car, he observed Parson on the sidewalk, talking with another man, and that shortly thereafter his client began to shake and become agitated, pointing toward the window of the car. (Id. at 42-43, 52-53). Farfan noticed that Parson was now holding a gun inches from his car. (Id. at 55). According to Farfan, he heard Parson state "I kill all the family." (Id. at 56). At this point, Farfan attempted to drive out of Arden Street, but was blocked by a marked police car near the intersection of Arden Street and Nagle Street. (Id. at 58-

59). Farfan testified that he waved his hands and after a few minutes was able to get the attention of the police officers who were standing near the patrol car. (Id. at 67-68). While trying to gain the attention of the officers, Farfan observed Parson dump a gun into a dumpster across the street from where Farfan was seated in his car. (Id. at 68-69). Farfan then told one of the officers what he had observed. (Id. at 70-72). The witness recounted that one officer stopped Parson and the other checked the dumpster, pulling out a gun. (Id. at 72-73).

At trial, on both direct and cross examination, Victor Farfan refused to reveal the identity of his client. (Id. at 75-77, 98-103). At a pre-trial hearing on the issue, the court stated that Mr. Farfan's refusal did not fall within any testimonial privilege recognized under state law. (June 3, 2009 Tr. 10).[1] However, recognizing that Mr. Farfan was bound by a written confidentiality agreement relating to his client, the court did not grant defense counsel's request to compel him to reveal the client's identity. (See July 1, 2009 Tr. 18; July 3, 2009 Tr. 17-18). Instead, as discussed pre-trial and upon application of counsel (see June 3, 2009 Tr. 21-22), the judge explained to the jury -- during the cross-examination of Mr. Farfan -- that Mr. Farfan had no legal obligation to withhold

---

[1] See infra pp. 31-32 n. 3.

6

the girl's identity and that the jurors could consider his refusal to do so in their evaluation of the evidence. (Id. at 99-100).

Officer Nino testified that he had been flagged down by Victor Farfan and, based on Farfan's account, had approached Parson, stopped him, and conducted a safety frisk of Parson's person. (Id. at 140-46). Officer Nino found nothing as a result of the safety frisk, but was once again called over by Farfan, who then told Officer Nino to look in the dumpster. (Id. at 147). Officer Nino then directed one of the other officers with whom he was working, Officer Perez, to check the dumpster. (Id. at 147-48). Officer Perez recovered a black handgun from the dumpster, which was about two feet from where Parson was standing, and Officer Nino then placed Parson under arrest. (Id. at 149-50, 181).

Officer Nino then conducted a second, more thorough, search of Parson and recovered three bullets from Parson's front right pants pocket. (Id. at 150). These bullets matched the caliber of the gun retrieved from the dumpster. (Id.).

Detective Tejada, a "firearms examiner" with the Firearms Analysis Section of the New York Police Department, conducted a

7

test of the recovered weapon. (Id. at 199-200, 204). He confirmed that the recovered bullets matched the caliber of the gun retrieved from the dumpster. (Id. at 216-18).

Parson testified on his own behalf. (Id. at 223-80). He contended that on the day of his arrest, he had seen a young man running down the stairs of his apartment building and that something had fallen out of the man's pockets. (Id. at 227-28). According to Parson, he found three bullets on the ground near where the man had run, and he picked them up and put them in his own pocket. (Id. at 228). Parson stated that his intention at the time was to try to sell the bullets. (Id. at 228-29).

When he went outside, Parson testified, he saw the same young man take something out of the waist of his pants and put it in a dumpster. (Id. at 235-36). Parson proceeded to look in the dumpster, thinking that the item might have been money or drugs. (Id. at 236). He contended that he had found the gun in the dumpster, picked it up for a brief moment, and then put it back down inside the dumpster. (Id. at 236-37). Parson claimed that he had intended to go back later to retrieve the gun for the sole purpose of turning it in to the precinct as part of the New York Police Department's cash-for-guns program. (Id. at 237-40).

The jury found Parson guilty of Criminal Possession of a Weapon in the Second Degree. (June 4, 2009 Tr. 462). Justice Solomon sentenced Parson to a prison term of three and one half years, to be followed by five years of post-release supervision. (July 14, 2009 Tr. 5-6).

## C. **The Appeal**

Following sentencing, petitioner filed an appeal to the Appellate Division, First Department. (See Answer Ex. A). He pressed four arguments -- (1) that Farfan's testimony about his unidentified client's nonverbal but expressive conduct violated the hearsay rule; (2) that the admission of that testimony violated his right to confrontation; (3) that the trial court's failure to require Farfan to disclose the name of the unidentified eyewitness interfered with petitioner's right to present a defense; and (4) that the police had illegally detained Parson after their initial frisk of his person revealed nothing, and that the fruits of that detention should therefore have been suppressed. (See id. at p. 2). In response, the State argued (1) that Parson's guilt had been proven beyond a reasonable doubt; (2) that the hearing court had properly denied Parson's motion to suppress the bullets recovered from him; and (3) that Mr. Farfan's testimony about his client's reaction was

not hearsay and that Parson was not entitled to a new trial because of Farfan's refusal to provide the name of his client. (See Answer Ex. B pp. 12-52).

On April 17, 2012 the Appellate Division affirmed Parson's conviction. People v. Parson, 94 A.D.3d 577, 944 N.Y.S.2d 18 (1st Dep't 2012). The court ruled that the officers' detention of Parson was reasonable under the circumstances, and that the search of him that yielded the bullets was lawful since it followed the police recovery of the gun from the dumpster. Parson, 94 A.D.3d at 578, 944 N.Y.S.2d at 19-20. The court further held that Farfan's description of his client's physical reaction did not constitute a hearsay declaration, and that because the reaction was neither testimonial nor offered for its truth, its admission did not constitute a Confrontation Clause violation. Parson, 94 A.D.3d at 578-79, 944 N.Y.S.2d at 20. The court also held that petitioner had not preserved his argument regarding a limiting jury instruction, and it declined to review that claim in the interest of justice. Parson, 94 A.D.3d at 579, 944 N.Y.S.2d at 20. Finally, the court upheld the trial court's decision not to compel Farfan to reveal the identity of the client, and thus rejected Parson's right-to-present-a-defense claim, as it was purely speculative whether her testimony would have provided exculpatory evidence. Id.

Petitioner then sought leave to appeal to the New York State Court of Appeals. (See Answer Ex. E). In a letter requesting leave, petitioner reasserted his Fourth Amendment claim and again argued that Farfan's testimony about his client's reaction was inadmissible hearsay and a violation of petitioner's rights under the Confrontation Clause, and that the failure to compel the identification of Farfan's client violated Parson's right to present a defense. Id. The Court of Appeals denied petitioner's leave request on August 15, 2012. (Answer Ex. G).

Parson filed his habeas petition with the Pro Se Clerk of this Court on August 15, 2013.

## Analysis

We evaluate Parson's claims in the order in which he presents them. We start, however, by summarizing the applicable habeas standards.

## I.   Standard of Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of a petitioner's

11

claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. §2254(d)). This statute states as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d), quoted in Harrington v. Richter, 131 S.Ct. 770, 783-84 (2011); Bell v. Cone, 535 U.S. 685, 693-94 (2002); Portalantin v. Graham, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc); Howard v. Walker, 406 F.3d 114, 121-22 (2d Cir. 2005).


Clearly established federal law "'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" Howard, 406 F.3d at 122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)). "[A] decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or
if the state court decided a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts.'"
Howard, 406 F.3d at 122 (quoting Williams v. Taylor, 529 U.S.
362, 413 (2000) (O'Connor, J., concurring)); see also Marshall
v. Rodgers, 133 S.Ct. 1446, 1448 (2013).

What constitutes an "unreasonable application" of settled
law is a somewhat murkier proposition. "'A federal court may not
grant habeas simply because, in its independent judgment, the
'relevant state-court decision applied clearly established
federal law erroneously or incorrectly.'" Howard, 406 F.3d at
122 (quoting Fuller v. Gorcyzk, 273 F.3d 212, 219 (2d Cir.
2001). The Supreme Court observed in Williams that the writ
could issue under the "unreasonable application" provision only
"if the state court identifies the correct governing legal
principle from this Court's decisions [and] unreasonably applies
that principle to the facts of the prisoner's case." 529 U.S. at
410-13. As implied by this language, "'[s]ome increment of
incorrectness beyond error is required...[H]owever...the
increment need not be great; otherwise habeas relief would be
limited to state court decisions 'so far off the mark as to
suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d
236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d

100, 111 (2d Cir. 2000)); accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

Under the Supreme Court's more recent, and arguably more stringent, interpretation of the statutory language, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 131 S.Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or...could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Harrington, 131 S.Ct. at 786. Under this more recent interpretation, a federal habeas court has "authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. In other words, to demonstrate an "unreasonable" application of Supreme Court law, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement." Id. at 786-87. "As Harrington bluntly states, '[i]f this standard is difficult to meet, that is because it was meant to be.'" Young v. Conway, 715 F.3d 79, 98 (2d Cir. 2013) (quoting Harringon, 131 S.Ct. at 786).

As for a state court's factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see also Rice v. Collins, 546 U.S. 333, 338-39 (2006).

## II. **Hearsay/Confrontation Clause Claim**

Petitioner first argues that the introduction of testimony by Victor Farfan about the reaction of his client on the day in question violated his rights under the Confrontation Clause and violated the rule against admission of hearsay. (Pet. ¶ 12, "Ground One"). Respondent argues that the Appellate Division's rejection of the Confrontation Clause claim was neither contrary to nor an unreasonable application of Supreme Court law. (Opp. 18-22). Respondent further asserts that the hearsay claim is

15

procedurally barred, not cognizable, and meritless. (Id. at 22-25). We agree that the Confrontation Clause claim is meritless and that the hearsay argument is not cognizable here.

The Confrontation Clause provides that the rights of an accused include the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Clause reflects a preference for face-to-face confrontation at trial, see Maryland v. Craig, 497 U.S. 836, 843-47 (1990), and was designed to guard against admission of "testimonial statements against the accused" that do not give the accused an opportunity for cross-examination. Crawford v. Washington, 541 U.S. 36, 56 (2004). More specifically, the Supreme Court has held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 53-54; see also United States v. Riggi, 541 F.3d 94, 102 (2d Cir. 2008). This prohibition has been qualified in two major respects that are pertinent here. First, the Confrontation Clause bars the use at trial only of "testimonial statements" by out-of-court declarants, a term that is limited to statements made by declarants with "an[] awareness or expectation that their statements might later be used at trial." United States v.

16

Goldstein, 442 F.3d 777, 785 (2d. Cir. 2006) (discussing Crawford and citing United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004)). Second, the Confrontation Clause "does not bar the use of testimonial statements for the purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9 (2004) (citing Tennessee v. Street, 471 U.S. 409, 414 (1985)); accord, e.g., United States v. Inadi, 475 U.S. 387, 398 n.11 (1986); Goldstein, 442 F.3d at 785.

Petitioner's claim fails on both counts. Farfan did not testify as to anything that his client said; he merely observed that his client had looked frightened and pointed in the direction of Parson, at which point Mr. Farfan focused on that individual and observed him holding a gun. (See June 3, 2009 Tr. 42-43, 52-53, 55). Necessarily, the client was not making a testimonial statement. Moreover, the purpose of this portion of Farfan's testimony was not to suggest that the client was conveying truthful information, but rather was solely to complete Mr. Farfan's narrative, with the explicit purpose of explaining why he had looked out the car window and seen Parson holding a gun. See Parson, 94 A.D.3d at 579, 944 N.Y.S.2d at 20.

Petitioner argues that the nonverbal conduct of Mr. Farfan's client "implicitly accus[ed] [him] of the crime, as

17

charged." (Pet. ¶ 12, "Ground One"). At no point during Mr. Farfan's testimony did he state that his client's reaction made him think that Parson was holding a gun, but simply that this reaction caused Mr. Farfan to turn and see Parson on the street with a gun. (See June 3, 2009 Tr. 53-54). As this testimony solely described the physical reaction of his companion and this did not convey a testimonial statement, and since in any event his testimony was not offered for the truth of an out-of-court declarant's statements, its admission did not implicate petitioner's rights under the Confrontation Clause and therefore is not a ground for relief. See, e.g., Goldstein, 442 F.3d at 784-85; Gibbons v. Ercole, 2010 WL 3199869, *6 (S.D.N.Y. Aug. 12, 2010).

Petitioner also appears to contend that Farfan's testimony regarding his client's agitated reaction constituted hearsay. (Pet. ¶ 12, "Ground One"). This version of his claim fails because habeas review is limited to claims of federal-law dimension. 28 U.S.C. § 2254(a); see also Casillas v. Scully, 769 F.2d 60, 63 (2d Cir. 1985); Delesline v. Conway, 755 F. Supp. 2d 487, 497 (S.D.N.Y. 2010); Nieves v. Fischer, 2004 WL 2997860, *5 (S.D.N.Y. Dec. 28, 2004). The hearsay rule, insofar as it is applicable in state court proceedings, is a product solely of state law. See, e.g., Ocasio v. Artuz, 2002 WL 1159892, *6

(E.D.N.Y. May 24, 2002); United States ex rel. Serrano v. Smith, 394 F. Supp. 391, 392 (S.D.N.Y. 1975); see also Pringle v. Bradt, 2012 WL 3614184, *8 (W.D.N.Y. Aug. 21, 2012). Accordingly this claim is not cognizable here.[2]

## III. **The Right to Present a Defense**

Parson next argues that the trial court's refusal to compel Victor Farfan to reveal the identity of his client, and the trial court's further refusal to grant a related limiting instruction, constituted improper interference with his right to present a defense. (Pet. ¶ 12, "Ground Two"). Petitioner also asserts that he was unable to "challenge the inconsistencies in the testimony of the primary witness." (Id.).

## A. **Refusal to Compel Identification of the Client**

On the failure of the trial court to compel Mr. Farfan to reveal the identity of the client, respondent argues that the Appellate Division's decision was neither contrary to, nor an unreasonable application of, Supreme Court law. (Opp. Mem. 25-29). We agree.

---

[2] We therefore need not address respondent's other arguments against petitioner's hearsay claim.

A criminal defendant has a constitutional right to a "meaningful opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (citing <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)). This right is secured via the Due Process Clause, as well as the Compulsory Process Clause of the Sixth Amendment. <u>United States v. Stewart</u>, 433 F.3d 273, 310 (2d Cir. 2006) (quoting <u>United States v. Almonte</u>, 956 F.2d 27, 30 (2d Cir. 1992)). Indeed, the right to present a defense is "one of the 'minimum essentials of a fair trial.'" <u>Almonte</u>, 956 F.2d at 30 (quoting <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973)).

In arguing that the trial court interfered with the constitutional right to present a defense, a petitioner may invoke a variety of different types of interference -- including limitations on cross examination, exclusion of evidence, and denial of compulsory process. <u>See</u>, <u>e.g.</u>, <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967); <u>Lopez v. Graham</u>, 2014 WL 2940855, *8, *16-19 (S.D.N.Y. June 30, 2014); <u>Johnson v. Cunningham</u>, 2011 WL 2462746, *7 (S.D.N.Y. May 2, 2011). And "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973).

Still, the right to present a defense "is not absolute." United States v. Mi Sun Cho, 713 F.3d 716, 721 (2d Cir. 2013); Johnson, 2011 WL 2462746, at *7. The Second Circuit has repeatedly emphasized that a trial court has "wide discretion to exclude proffered evidence that is collateral, rather than material, to the issues in the case." Mi Sun Cho, 713 F.3d at 721; United States v. Jackson, 513 F. App'x 51, 56 (2d Cir. 2013); United States v. Scopo, 861 F.2d 339, 345 (2d Cir. 1988). Moreover, on the specific point of the right to present witnesses at trial, "[t]he Supreme Court has made clear that in order to show a violation of the Sixth Amendment right to compulsory process, a defendant must establish that the witness's testimony would have been material and favorable to the defense case." Jackson, 513 F. App'x at 56 (citing United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982)).

Here Parson argues that the trial court's failure to compel Farfan to reveal the identity of his client violated his constitutional right to present a defense. (Pet. ¶ 12, "Ground Two"). Petitioner states that, as a result, "[t]he unidentified second witness was permitted to testify vicariously through the primary witness." (Id.). To the extent that this assertion is separate and apart from his hearsay and confrontation claims,

21

petitioner is presumably invoking his right to present witnesses in his own defense. (See also Answer Ex. E 7).

This theory is unsustainable. While the testimony of the client may have been relevant to petitioner's defense, there is no reason to believe that it would have been favorable to his defense, nor was the trial court's exclusion of this evidence contrary to or an unreasonable application of Supreme Court law.

The Appellate Division correctly held that the assertion by petitioner that the unidentified client would "have provided exculpatory evidence is speculative." Parson, 94 A.D.3d at 579, 944 N.Y.S.2d at 20. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976).

Petitioner has failed to argue, or to present any evidence to support the argument, that the identity of Farfan's client (and her hypothesized later testimony) would have assisted in his defense in any way. In fact, if called, she would likely have corroborated Farfan's own testimony that Parson was holding a gun, thus making her absence from Parson's trial a benefit to

his own defense. The trial court's decision not to order identification of this eyewitness was well within its discretion, especially after the careful consideration afforded to this issue: The court heard multiple arguments from both sides regarding this testimony and questioned Farfan outside the presence of the jury regarding his refusal to reveal his client's identity. (See July 3, 2009 Tr. 10-22). The state court's decision on this issue was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and accordingly this claim is not a ground for relief. This is far from a situation in which a trial judge's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S.Ct. at 786-87.


## B. Failure to Give a Limiting Instruction

Petitioner further claims that the failure of the trial judge to give a limiting instruction -- that the jurors could not consider Mr. Farfan's description of his client's physical conduct as proof of Parson's possession of a firearm -- violated his right to present a defense. (Pet. ¶ 12, "Ground Two"). Respondent asserts that Parson failed to preserve the issue and therefore is not entitled to habeas relief on this ground

either. (Opp. Mem. 22-23). We agree, and also note that, in any event, the claim is meritless.

## 1. **Procedural Bar**

Petitioner did not preserve his jury-charge claim, as his attorney did not object to the instructions that Parson now challenges nor did his attorney request the specific limiting instruction referenced in the petition. (See June 3, 2009 Tr. 9-20, 100-01). The Appellate Division explicitly relied on this omission, rejecting the claim on the basis that it was "unpreserved." Parson, 94 A.D.3d at 578, 944 N.Y.S.2d at 20.

With only limited exceptions, we may "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999); see also Manning v. Rock, 2014 WL 6865588, *3 (S.D.N.Y. Dec. 5, 2014); Peterson v. New York, 2009 WL 935669, *4 (S.D.N.Y. Apr. 7, 2009). Under New York law, the failure to object constitutes a waiver of the objection under the contemporaneous-objection rule embodied at N.Y. Crim. Proc. Law § 470.05(2), which generally allows for preservation of a claim only if a party makes a specific protest

at a time when the trial court has an effective opportunity to correct an error. That rule has long been recognized as a settled and legitimate requirement under New York law. See, e.g., Pearson v. Racette, 2012 WL 4513468, *14 (S.D.N.Y. Aug. 3, 2012) ("New York Criminal Procedure Law § 470.05, itself has a compelling history of approval by the federal courts.") (citing federal cases); Olivo v. Thorton, 2005 WL 3292542, *9 (S.D.N.Y. Dec. 6, 2005) ("In order to preserve her erroneous jury charge claim for appellate review, [petitioner] was required to object at the time of the instructions.") (citing state cases); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("We now recognize the important interest in finality served by state procedural rules, and the significant harm to the States that results from the failure of federal courts to respect them."

Plainly, the appellate court's reliance on the contemporaneous-objection rule is adequate as well as independent. Therefore, since "'the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar,'" Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (quoting Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996)), the jury-instruction claim is subject to a procedural bar here unless Parson can demonstrate the

applicability of one of two recognized exceptions to the unreviewability of such a decision.

To obtain review of an otherwise procedurally barred claim, the petitioner must either demonstrate cause for the default and actual prejudice, or else show that failure by the habeas court to consider the claims would result in a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Jimenez v. Walker, 458 F.3d 130, 138-140 (2d Cir. 2006) Green, 414, F.3d at 294.

A showing of cause generally requires a demonstration that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Mercado v. Portuondo, 77 F. App'x 546, 548 (2d Cir. 2003); Bloomer v. United States, 162 F.3d 187, 191 (2d Cir. 1998). For example, petitioner might demonstrate "that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." Murray, 477 U.S. at 488 (citations omitted). Cause for procedural default can also be shown by demonstrating that constitutionally ineffective assistance of counsel had led to the default. Murray, 477 U.S. at 488-89. To demonstrate

26

prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original); see also Rodriquez v. Mitchell, 252 F.3d 191, 203-04 (2d Cir. 2001); Diaz v. United States, 2014 WL 4449782, *4 (S.D.N.Y. Sept. 10, 2014).

The fundamental-miscarriage-of-justice exception is reserved for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496; Sawyer v. Whitley, 505 U.S. 333, 339 n.6 (1992). Excuse of procedural default under this exception requires "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Diaz, 2014 WL 4449782, at *5 (quoting Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012)). A petitioner cannot meet this standard unless "the claim of actual innocence [is] both credible and compelling." Id. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy

27

eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

Petitioner satisfies neither test. He has not demonstrated any cause for his procedural default. There is no reason to conclude that his attorney was unable to object to the court's instructions, and indeed his attorney did request a different addition to the jury instructions (regarding the jury's ability to use Farfan's refusal to identify his client in their evaluation of his credibility). (See June 3, 2009 Tr. 9-20, 99-101). Moreover, even were petitioner to argue to this court that the trial attorney's failure to raise the jury-charge issue amounted to constitutionally ineffective assistance of counsel (an argument that he does not appear to be making from the face of the petition), he could not show cause since he failed to argue, much less exhaust, such a Sixth Amendment claim in the state courts, and therefore this claim is not reviewable here. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000); Sweet v. Bennett, 353 F.3d 135, 141 n.7 (2d Cir. 2003).

Additionally, petitioner cannot show real prejudice as a result of not having received the now-desired limiting instruction. We cannot even go so far as to say that it "created the possibility of prejudice," let alone "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (1982) (emphasis in original). Mr. Farfan plainly testified that he saw petitioner with a gun. (See, e.g., June 3, 2009 Tr. 56). Even petitioner himself admitted that, at least at some point during the incident in question, he was holding that gun. (See, e.g., id. at 237). The suggestion that the requested instruction would have somehow influenced the outcome of the trial is entirely speculative.

Finally, petitioner does not demonstrate that a fundamental miscarriage of justice would be triggered by a rejection of the claim on procedural grounds. Parson has offered no reliable evidence that was not already presented at trial to indicate his actual innocence, and the trial record amply justified the jury's verdict.

We therefore conclude that this claim is procedurally barred from habeas review. We proceed to note in any event that the claim is meritless.

29

## 2. Merits

Even if we considered petitioner's claim on its merits, it would still fail. A habeas court may overturn a conviction based on an erroneous jury charge only if the petitioner establishes "not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. McNaughten, 414 U.S. 141, 146 (1973); see also Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001). This error must "by itself [have] so infected the entire trial that the resulting conviction violates due process." Cupp, 414 U.S. at 147. In making such an appraisal, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Id. at 146-47 (citing Boyde v. United States, 271 U.S. 104, 107 (1926)).

Parson's claim that the failure to include a limiting instruction regarding the "statements of the unidentified second witness" constituted an improper interference with his right to present a defense is meritless. (See Pet. ¶ 12, "Ground Two"). The absence of this limiting instruction did not "ensure that [Parson] would be harmed." (Id.). Farfan only described the girl's reaction as he observed it and went on to testify that he

had personally witnessed the petitioner holding a gun. (June 3, 2009 Tr. 42-43, 52-55). As we have already stated, even were the trial court to have given the instruction now suggested by petitioner, the effect would likely have been minimal, if not non-existent. This is a far cry from the facts of a case in which "[t]he effects of the court's erroneous instruction were to deprive [petitioner] entirely of his defense -- on which he had a significant possibility of prevailing -- and to insure his conviction." Davis, 270 F.3d at 132. The effect of the alleged error in our case does not even remotely approach this level.[3]

---

[3] In fact, we are moved to point out that, not only was the jury instruction actually given on this issue likely not prejudicial, it now appears to have been an error that unfairly handicapped the prosecution. Again, the State put Mr. Farfan on the stand, and he described how his unidentified client appeared visibly shaken by what she had seen. (June 3, 2009 Tr. 42-43, 52-53). In turn, this physical reaction caused Mr. Farfan to glance in petitioner's direction, thus leading to his witnessing petitioner's holding of the gun. (Id. at 52-55).

During the pre-trial hearing on this issue, the defense repeatedly pressed the notion that Mr. Farfan's refusal to reveal the identity of his client did not fall within any law requiring confidentiality. (See, e.g., id. at 15) ("And for the jury, which may well infer[], okay, he has got a right to refuse or something. They may have heard doctor/patient privilege. They may assume there is some social worker privilege in the law here, which there is not."). And indeed, the trial judge accepted this legal proffer. (Id. at 16) ("[T]he confidentiality agreement doesn't excuse him from providing her name. In his mind it might. But under the law, really, it doesn't.").

As a result, the judge gave the jury the following instruction when Mr. Farfan eventually testified before them:

Members of the jury...you've heard that this witness has been asked to give the name of this girl...Although he has no legal basis to refuse to provide her name, he's given the reasons why he will not. And, again, when you consider his testimony at the end of the case when you're evaluating the evidence in this case, you can consider his refusal to give the name of the girl and the reasons that he's provided.

(Id. at 100). Subsequently, on summation, the defense attorney used this instruction to attack Mr. Farfan's credibility. (See, e.g., June 4, 2009 Tr. 353-56). For example:

31

### C. Inability to Challenge Inconsistencies in the Testimony of Mr. Farfan

Turning now to petitioner's claim that his "right to present a defense was further impeded by [his] inability to challenge inconsistencies in the testimony of the primary witness" (Pet. ¶ 12, "Ground Two"), we again conclude that his claim is both procedurally barred and meritless.

While petitioner does not expand upon his allegations in the petition -- and his legal argument is not entirely clear -- the record before us at least reveals the nature of this inconsistency. When Mr. Farfan testified before the grand jury, he apparently stated that it was his unidentified client who

---

[Mr. Farfan] refuses to answer and he's got no legal basis to do that. I submit to you this was a willful refusal on his part. We live in a society where we have laws here...[H]e refuses to answer. Defiance of law...He swore to the truth and the whole truth. He didn't do that here, so I submit his testimony is less than credible.

(Id.).

The respondent, however, alerts us to the fact that, apparently unbeknownst to either the trial judge or counsel, there is a law in New York that protects the confidentiality of children in the social services system. (See Opp. Mem. 29 n.9). By statute, such records are confidential. See N.Y. Soc. Servs. L. § 372(3). And the New York Court of Appeals has cited this (seemingly rarely invoked) law to insist that this information "not be easily disclosed" and that "preliminarily...there be a showing of necessity for an in camera viewing" before disclosure can be made. See Matter of Louis F., 42 N.Y.2d 260, 264-65, 397 N.Y.S. 2d 735, 736 (N.Y. 1977).

Notwithstanding this statute, the trial court gave an instruction -- on which defense counsel understandably built -- that degraded the credibility of the prosecution's chief witness. Hence, there may very well have been some amount of prejudice at play in the underlying case that grew from this instruction. But while petitioner here suggests that he was greatly prejudiced by the trial judge's handling of this issue, the reality is that the ruling he challenged gave him more protection than New York law permitted.

eventually got out of the car and went to get the police. (June 1, 2009 Tr. 202; June 3, 2009 Tr. 110-12). At trial, however, Mr. Farfan testified that he waved his own hands from the car, thereby getting the attention of the nearby officers. (June 3, 2009 Tr. 67-68).

At trial, defense counsel read the question-and-answer colloquy from the grand-jury session into the record. (Id. at 110). At that point, Mr. Farfan admitted that he could not remember giving the earlier testimony and repeatedly stated that he could not remember if the girl had gotten out of the car. (Id. at 87, 89, 110-11). On summation, defense counsel labeled this as Mr. Farfan "shift[ing] his story." (June 4, 2009 Tr. 35).

This claim may well be unexhausted,[4] but we bypass that question, since the claim is clearly meritless. See 28 U.S.C. § 2254(b)(2).

---

[4] To exhaust his state-court remedies, a petitioner must "fairly present" his federal claims to the highest state court capable of review. Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 808 (2d Cir. 2000). Here petitioner appears not to have raised this issue in his application for leave before the New York Court of Appeals, although the record before us is slightly incomplete. We possess two letters written to the Court of Appeals, both for and against leave to appeal. (See Opp. Exs. E & F). The first appears to be a supplementary letter on behalf of petitioner's original application, not that application itself. (Opp. Ex. E p. 1 n.1). However, neither this letter, nor the District Attorney's opposition letter, makes any mention of the "inconsistency" issue, suggesting that it was indeed not presented to the Court of Appeals -- a fact made all

As mentioned, trial courts have "wide discretion to exclude proffered evidence that is collateral, rather than material to the issues in the case." Mi Sun Cho, 713 F.3d at 721. Moreover, to demonstrate that a court ruling precluding or otherwise limiting a witness's testimony violates this right requires a habeas petitioner to "establish that the witness's testimony would have been material and favorable to the defense case." Jackson, 513 F. App'x at 56.

In our case, the trial judge gave defense counsel ample opportunity to explore this issue, both during the examination of Mr. Farfan as well as during summations. (See, e.g., June 3, 2009 Tr. 110-12). That the judge declined to allow counsel to question Mr. Farfan ad nauseum about this issue was well within his discretion. The suggestion that further questioning of Mr. Farfan on this subject would have been material and favorable to the defense is speculative at best.

Therefore, this claim, even if not procedurally barred, would also fail on the merits and not be an avenue of relief.

---

the more likely by the absence of this argument in petitioner's briefs to the Appellate Division.

34

## IV. Unlawful Seizure Claim

Finally, Parson argues that his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment was violated when the police detained him after their initial stop and frisk of his person revealed nothing. (Pet. ¶ 12, "Ground Three"). Respondent argues that this claim is barred from habeas review under Stone v. Powell, 428 U.S. 465 (1976). (Opp. Mem. 29-31). We agree.

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." Id. at 494. Such a claim may be heard only in the following two scenarios:

(a)   if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or
(b)   if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.

Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Parson has not shown that either of these circumstances has occurred in his case. New York provides a fully functional

35

mechanism for Fourth Amendment review, affording the opportunity
for the defendant to move for suppression, providing for an
evidentiary hearing if justified by the motion papers, and
allowing appellate review of an adverse trial-court decision.
See McPhail v. Warden, 707 F.2d 67, 69 (2d Cir. 1983).

Moreover, Parson took full advantage of these opportunities
by moving to suppress, participating in a suppression hearing,
and appealing the denial of his motion. He therefore cannot show
an unconscionable breakdown in the available procedures. As the
Second Circuit has noted, "mere disagreement" with a state-court
decision is not a basis for avoiding the rule of Stone v.
Powell. Capellan, 975 F.2d at 72; see also Pena v. State of New
York, 2008 WL 4067339, *10-11 (S.D.N.Y. Aug. 26, 2008) (citing
cases). Instead, an "unconscionable breakdown" is defined to
encompass substantial failures in the process, such as the
"ambush[ing of the defendant] by the unanticipated and
unforeseeable application of a state court procedural rule at a
time when it can no longer be complied with," Gomez v. LeFevre,
1989 WL 63030, *5 (S.D.N.Y. June 2, 1989), or still more extreme
circumstances, including the bribery of a judge, use of torture,
or use of perjured testimony. See Kirk v. Burge, 646 F.Supp.2d
534, 545 (S.D.N.Y. Aug. 6, 2009) (citing Allah v. LeFevre, 623
F. Supp. 987, 991-92 (S.D.N.Y. 1985)); see also Capellan, 975

36

F.2d at 71-72. Needless to say, none of these types of rare circumstances are found here.

## Conclusion

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable William H. Pauley, Room 1920, 500 Pearl Street, New York, New York 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d); Thomas v. Arn, 474 U.S. 140, 150 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d.

Cir. 2000) (citing Small v. Sec'y. of Health & Human Servs., 892

F.2d 15, 16 (2d Cir. 1989)).




**Dated:      New York, New York**
**            December 29, 2014**


                              _____
                              **MICHAEL H. DOLINGER**
                              **UNITED STATES MAGISTRATE JUDGE**



Copies of the foregoing Report & Recommendation have been mailed
today to:

**David Parson**
25 Arden Street
Apt# 21
New York, NY 10040

**Michelle Elaine Maerov**
Office of New York State Attorney General
120 Broadway, 24th Floor
New York, NY 10271